**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TURTURRO LAW, P.C.

                                 Plaintiff

           -against-

ANDREW M. CUOMO, in his official capacity as the Governor
of the State of New York, and BILL de BLASIO, in his official
capacity as the Mayor of the City of New York,

                              Defendants.

ECF CASE

**COMPLAINT**

Docket No.:20-cv-4824

 

       Plaintiff TURTURRO LAW, P.C. ("Turturro Law") as and for its Complaint against

Defendant ANDREW M. CUOMO, in his official capacity as the Governor of the State of New

York ("Defendant Cuomo") and Defendant BILL de BLASIO, in his official capacity as the

Mayor of the City of New York ("Defendant de Blasio" and collectively with Defendant Cuomo,

"Defendants") hereby alleges, as for their Complaint against Defendants, as follows:

## NATURE OF ACTION

1. This action seeks a declaratory judgment, injunctive relief, attorneys' fees and costs for
   the deprivation of Plaintiff's Constitutional rights to which it is entitled under both the
   United States Constitution and the New York State Constitution.

2. This action seeks recovery for deprivations sustained by Plaintiff, and for violations
   committed by Defendants while acting under color of state law against Plaintiff's rights
   and privileges guaranteed by Article I, § 8, Clause 3 (Commerce Clause); §10, Clause 1
   (Contracts Clause); the Fifth, Ninth, Tenth and Fourteenth Amendments of the United
   States Constitution, and New York Constitution Articles III, §1; IV, §§ 1 and 3; and VI.

3. Defendants, in a glaring abuse of power, have seized the COVID-19 pandemic to expand their authority, without any proper Constitutional, statutory, or common law basis therefor.  Plaintiff thus brings this lawsuit to assert challenges to the arbitrary and unconstitutional action taken by Defendants in response to the COVID-19 pandemic.

## PARTIES

4. Turturro Law is a New York Professional Corporation with its principal place of business located at 1602 McDonald Avenue, Brooklyn, NY 11230, and is primarily engaged in the practice of law throughout the five boroughs of New York City, Nassau, Suffolk, and Westchester counties.

5. Defendant Cuomo is and was the Governor of the State of New York, and is and was acting under color of State law and in his official capacity, at all times relevant to the assertions made by Plaintiff herein. Upon information and belief, Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York 12224.

6. Defendant de Blasio is and was the Mayor of the City of New York, and is and was acting under color of State law and in his official capacity, at all times relevant to the assertions made by Plaintiff herein.  Upon information and belief, Defendant de Blasio's principal place of business is located at the City Hall, New York, NY 10007.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over the claims asserted by Turturro Law because this action involves claims based upon Article I of the United States Constitution, the Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution (U.S. Const. amend. V, IX, X, and XIV), interpretation of the

Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution and because the action seeks to prevent Defendant State and City officials from interfering with federal rights secured by the United States Constitution.

8.  Pursuant to 28 U.S.C. § 1343(a)(3) and (4), the Court has subject matter jurisdiction over the claims asserted by Plaintiff because this action is brought to redress deprivations under color of State law, statute, Executive Order, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the United States Constitution.

9.  Pursuant to 28 U.S.C. § 1391(b), venue is properly vested in this Court because Defendants conduct substantial business in this judicial district, and a substantial part of the events giving rise to these claims occurred in this judicial district.

## STATEMENT OF FACTS

**A.  Defendant Cuomo's Executive Orders and Initiative**

10. On March 7, 2020, Defendant Cuomo issued Executive Order 202, which, in relevant part, declared a State Disaster Emergency for the State of New York based upon the fact that travel-related cases and community contact transmission of COVID-19 had been documented in New York State, and that similar declarations had previously been made by the World Health Organization and United States Health and Human Services Secretary Alex M. Azar II.

11. On March 18, 2020, in response to the COVID-19 pandemic, Defendant Cuomo issued Executive Order 202.6, which proclaimed, in relevant part, as follows (emphasis added): Effective on March 20, 2020 at 8 p.m.:

> All businesses . . . shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize . . . [and] shall reduce the in-person workforce at any work locations by 50% no later than March 20[, 2020] at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. . .

> . Any other business may be deemed essential after requesting an opinion from
> [New York State Department of Economic Development d/b/a Empire State
> Development ("ESD")], which shall review and grant such request, should it
> determine that it is in the best interest of the state to have the workforce continue
> at full capacity in order to properly respond to this disaster. No later than 5 p.m.
> on March 19, 2020, [ESD] shall issue guidance [("Guidance")] as to which
> businesses are determined to be essential.

12. On March 20, 2020, Defendant Cuomo subsequently issued Executive Order 202.8,

    which further proclaimed, in relevant part, as follows (emphasis added): The provisions

    of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22[,

    2020] at 8 p.m.:

> All businesses . . . shall utilize, to the maximum extent possible, any
> telecommuting or work from home procedures that they can safely utilize. Each
> employer shall reduce the in-person workforce at any work locations by 100%
> no later than March 22[, 2020] at 8 p.m. Any essential business or entity
> providing essential services or functions shall not be subject to the in-person
> restrictions. An entity providing essential services or functions whether to an
> essential business or a non-essential business shall not be subjected to the in-
> person work restriction, but may operate at the level necessary to provide such
> service or function.

13. Pursuant to Defendant Cuomo's Executive Orders, ESD issued Guidance, which set forth

    certain industries which ESD deemed "essential," on behalf of Defendant Cuomo, and

    which were therefore permitted to remain in operation during the COVID-19 pandemic.

14. Although legal services were not initially included within ESD's Guidance, ESD

    amended the Guidance on April 9, 2020 to include the following (emphasis added):

> *Lawyers may continue to perform all work necessary for any service so long as
> it is performed remotely. Any in-person work presence shall be limited to work
> only in support of essential businesses or services; however, even work in
> support of an essential business or service should be conducted as remotely as
> possible.*

15. Businesses deemed "essential" were not subject to the in-person restrictions, and those

    not specifically deemed essential could request an opinion from New York State's ESD

    as to whether certain of its business activities were essential.

16. Since the State's pandemic response began in earnest, Governor Cuomo has reportedly issued over 40 Executive Orders including EO 202.35, which loosened restrictions on businesses, starting May 29, 2020, based on scientific data showing a sufficiently low infection rate, capacity of the health care system to absorb a potential resurgence of new cases, and increased diagnostic testing and contact-tracing capacity.  EO 202.35 stated that, "effective at 1:00 p.m. on May 29, 2020," "the reductions and restrictions on the in-person workforce at non-essential businesses or other entities shall no longer apply to Phase Two industries. Upon information and belief, as of June 2, 2020, New York City has entered Phase Four and Turturro Law was operating, without interruption, since it was lawfully allowed to.

17. Nevertheless, on October 6, 2020, in a public briefing, Defendant Cuomo announced "a new cluster action initiative" ("Initiative") to address COVID-19 hot spots that have cropped up in Brooklyn, Queens, and Broome, Orange and Rockland Counties.[1] The initiative is composed of three steps:

   a. Take dramatic action within the cluster.
   b. Take action in the area surrounding the cluster to stop the spread.
   c. Take precautionary action in the outlying communities.

18. Among other areas divide clusters and the areas around them into three categories with successively higher restrictions within each one: Red Zone - cluster Itself; Orange Zone - warning zone; and Yellow Zone - precautionary zone.
The enforcement of the zones will go into effect as soon as Wednesday, October 7 and no later than Friday, October 9.

19. As depicted in the below picture, for the portion of the "Initiative" map that affects Brooklyn residents and businesses, Turturro Law, despite having no issues with any

---

[1]*See*, https://www.governor.ny.gov/news/governor-cuomo-announces-new-cluster-action-initiative#initiativemaps
(last visited on October 7, 2020).

infections and compliance with all applicable laws, was arbitrarily placed in a designated "red zone."



20. Moreover, unlike before, a non-essential business (in a "red zone" or otherwise) can no longer apply to ESD for an exemption. Therefore, under the Initiative, one's business address on the applicable Initiative map (as opposed to scientific or other rational guidelines) dictates whether one can remain open, remain open with limitations, or remain closed.

21. The rationale behind the Initiatice is especially confounding when one considers the
Governor's stated purpose in implementing it. As reported in the New York Times on
October 6, 2020[2]:

> "in announcing his actions, Mr. Cuomo explicitly singled out houses of worship
> for new capacity limits, and prohibited mass gatherings in certain areas where
> there are virus clusters."
>
> "If we had enforced the laws we would not be here today," Mr. Cuomo said,
> blaming localities for not enforcing social distancing rules and mask mandates.
> He added that the gatherings that he believed caused the spike in infections
> "were all illegal."

22. Turturro Law is neither a house of worship nor a place of mass gatherings. It is a law
office that operates in a safe, sanitary, and controlled environment that was (and still is)
compliant with all of the state and City's COVID-19 protocols. Thus, the Initiative,
which was hastily implemented by Defendant Cuomo in an effort to target mass
gatherings in the City (and other locations) because of a locality's failure to enforce
"social distancing rules" and "mask mandates", now forces Turturro Law (and numerous
other non-essential businesses) to shutter its doors despite its diligent efforts and
compliance with "social distancing rules" and "mask mandates."

24. In any event, there is no scientific or other rational basis supporting the arbitrary zoned
designations depicted in the Initiative maps. For example, virtually all of Brooklyn is
designated yellow, which is a "precautionary zone" yet nothing precludes an individual
from traveling down the block into an orange or red zone. Moreover, at present, there is
no lawful basis for suggesting that the public's health or safety is furthered by shuttering
a non-essential law office in a "red zone" while a non-essential law office located several

---

[2] *See*, "*Cuomo Imposes Tight Virus Rules on Areas Hit by Spikes Across State", New York Times,
(https://www.nytimes.com/2020/10/06/nyregion/cuomo-shutdown-coronavirus.html) (last visited on October 7,
2020)

blocks away in an orange or yellow zone remains open.

25. Defendants concede that the Initiative is unlawful. In fact, the Initiative issued by
Defendant Cuomo largely mirrors that laid out by Defendant de Blasio two days prior,
which Defendant Cuomo himself deemed arbitrary. Specifically, during a press
conference held on October 5, 2020, Defendant Cuomo depicted the planned potential
closures via zip code designations (proposed by Defendant de Blasio to address the
Covid-19 clusters) as  "arbitrary lines," specifically confirming that this would not be a
focused directive meant to curb the outbreak. A relevant snapshot of that briefing is
reproduced below:



26. Yet, inexplicably, less than 24 hours later, Defendant Cuomo reversed course and issued
the Initiative, which Defendant de Blasio adopted on October 7, 2020 at a press briefing
and will began enforcing today, October 8, 2020.

**B. Turturro Law's Steps to Ensure a Clean and Healthy Work Environment.**

27. Since the outset of the pandemic, Plaintiff adapted to ensure its compliance with all of the
necessary and appropriate social distancing, cleaning/disinfecting protocols and daily
temperature checks, as required or recommended by the state and federal agencies.  This

includes, but is not limited to, temperature checks and Covid-19 questioning of all clients and employees upon entry into Plaintiff's premises; the availability of hand sanitizers, and extra masks in every room; and, reduced workforce along with social distancing and mask-wearing at all times. Notwithstanding these diligent efforts at compliance, Plaintiff now finds its business closed due to the Initiative.

**C. Impact of Defendant Cuomo's Executive Orders and Initiative on the Physical, Mental, and Emotional Health of New York State Residents.**

28. The available data from studies performed throughout New York does not support the legitimacy of the Defendants' continuing action in issuing and/or implementing the arbitrary, unduly excessive Initiative, which has the full force and effect of law upon individuals and businesses located within the color-coded areas depicted in thee Initiative maps.

29. To be clear, Plaintiff does not criticize Defendant Cuomo for taking steps and measures based on the data available to him at the time of the issuance of shutdown measures taken in March 2020 via Executive Orders. Plaintiff recognizes the need for cautious planning and austere measures and exercise of emergency powers that infringe on the rights of the people when the data supports it.

30. As more fully set forth below, the Initiative at issue, does not fit such criteria.

**D. Violations and Deprivations of Turturro Law's Constitutional Rights.**

   ***i.    The Dormant Commerce Clause: Article I, Section 8, Clause 3 of the United States Constitution 71.***

31. Article I, Section 8, Clause 3 of the United States Constitution (the "Commerce Clause") provides that the United States Congress shall have the power "[t]o regulate Commerce

with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, sec. 8, cl. 3.

32. The Supreme Court, in numerous decisions, has imported into the Commerce Clause a prohibition against states passing legislation that discriminates against, or otherwise excessively burdens, interstate commerce. *See, e.g., Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 669-70 (1981).

33. Defendants' Initiative discriminates against, and places an excessive burden upon, interstate commerce.

34. In particular, Plaintiff has clients throughout the United States, and clients located in New York City, Nassau, Suffolk, and Westchester counties including those in industries deemed essential by ESD's Guidance, who/which regularly conduct business throughout the United States of America and/or internationally.

35. By taking the above actions, Defendants have discriminated against, and placed an excessive burden upon, Turturro Law, which regularly engages in interstate commerce, as Defendants have restricted the conduct of business in order to combat the COVID-19 pandemic.

36. In sum, while combatting COVID-19 is an objectively positive goal, the present means of doing so being utilized by Defendants have unduly and unnecessarily restricted Plaintiff, and are necessarily unconstitutional under, and pursuant to, the Commerce Clause.

*ii.* **The Contracts Clause: Article I, Section 10, Clause 1 of the United States Constitution**

37. Article I, Section 10, Clause 1 of the United States Constitution (the "Contracts Clause") provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, sec. 10, cl. 1.

38. As described above, in issuing and enforcing the Initiative, Defendants have placed undue and excessive burdens upon Plaintiff and the firm's conduct of business during the COVID-19 pandemic.

39. Such burdens include, but are certainly not limited to, impairing Turturro Law's obligations under contracts with its clients (particularly those clients engaged in business in industries deemed essential by ESD's Guidance), vendors, and independent contractors.

40. By placing such undue and excessive burdens upon Plaintiff and the firm's conduct of business, thereby impairing Turturro Law's obligations under certain contracts with its clients, vendors, and independent contractors, Defendants have infringed upon the Constitutional rights of Turturro Law pursuant to the Contracts Clause.

### iii.    *The Due Process Clause – Substantive and Procedural: Fifth and Fourteenth Amendments to the United States Constitution*

41. The Fifth Amendment to the United States Constitution provides: "[N]or shall any person . . . be deprived of life, liberty, or property, without due process of law [(the "Due Process Clause")]; nor shall private property be taken for public use, without just compensation [(the "Takings Clause")]." U.S. Const. amend. V.

42. The Supreme Court has held that "[t]he fundamental principle that laws regulating persons or entities must give fair notice of what conduct is required or proscribed . . . is essential to the protections provided by the Fifth Amendment[] . . . which requires the invalidation of impermissibly vague laws." *F.C.C. v. Fox Television Stations*, 567 U.S. 239, 240 (2012).

### iv.    *The Fourteenth Amendment to the United States Constitution has been used to apply the protections of the Fifth Amendment to those violations of persons'*

11

**rights by the States.**

43. The Fourteenth Amendment provides, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law" (the "Due Process Clause"). U.S. Const. amend. XIV. 85. The Fifth Amendment, by and through the Fourteenth Amendment, provides both substantive and procedural due process rights to individuals.

44. Here, in issuing and enforcing the Initiative, Defendants' actions have violated both Plaintiff's substantive and procedural due process rights. Even assuming, *arguendo,* that there exists a legitimate State interest in protecting the public's health, the actions of Defendant in this matter are unreasonable and arbitrary, and are not the least restrictive means for achieving the State's interests.

45. Given the types of services being provided by Turturro Law, Defendant's action in issuing and enforcing the Initiative, which effectively closes Turturro Law's doors, bears no relation to the State's purported interest in further protecting the public's health and welfare by "crushing the cluster", and is severely and unduly restrictive of Plaintiff's constitutional rights. Indeed, there is no evidence to suggest that, by not shuttering its business or continuing its operations as any other law firm presently is, Turturro Law is placing the public at any greater of a risk of contracting COVID-19, whether it be Turturro Law's clients, employees, or others visiting the office.[3]

---

[3] As of the drafting of this Complaint, Thursday, October 8, 2020, Turturro Law has not had a single employee test positive for COVID-19 nor has it encountered or met with a single client (in its office) that has tested positive for COVID-19 since the World Health Organization (WHO) declared the novel coronavirus (COVID-19) outbreak a global pandemic on March 11, 2020.

46. Simply put, the available scientific data from studies from New York State or those performed throughout the United States do not support the legitimacy of the Defendants actions.

47. Whereas at one point in time, there was insufficient data on the COVID-19 such that certain austere measures may have been justified on an emergency basis, this Initiative cannot be justified by any legal or reliable scientific metric.

### v. Plaintiff Turturro Law's property and liberty interests in remaining in business amid the COVID-19 pandemic.

48. Turturro Law has a protected liberty interest in its right to remain in business without arbitrary governmental interference and in its fundamental property right to use and enjoy the land in which it holds a recognized interest. *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440-41 (E.D. Pa. 2011) (*citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)).

49. The Supreme Court "ha[s] emphasized time and again that [t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

50. "[T]he fault [may] lie[] in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Id.* at 845-46 (*citations omitted*).

51. "[S]ubstantive due process prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (*quoting Rochin v.*

*California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)).

52. Applied here, the Initiative constitutes an arbitrary, capricious, irrational, and abusive conduct which unlawfully interferes with Turturro Law's liberty and property interests protected by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

   *vi.    The Equal Protection Clause: Fourteenth Amendment to the United States Constitution*

53. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

54. At its core, the Equal Protection Clause of the 14th Amendment to the United States Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups; in other words, persons who appear similarly situated must be similarly treated.   When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational basis for such disparate treatment, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

55. Law firms around the State of New York, non-hotspots in New York City and virtually every other location in the United States of America are free to continue to operate,

whereas Plaintiff is prevented from so operating by virtue of this Initiative placing it within a red zone.[4]

56. There is no rational basis for the disparate treatment of Plaintiff by Defendant as compared to identically situated businesses.

57. Therefore, Defendants' Initiative, on its face, and as applied and enforced against Plaintiff is therefore in direct violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

   **vii.   *The Takings Clause: Fifth and Fourteenth Amendments to the United States Constitution***

58. "[T]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

59. Defendants have seized, without just compensation, the property of businesses and individuals across "red zone" designated areas by forcing the closure of non-essential businesses and restricting travel and free association via the issuance and enforcement of the Initiative.

60. These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment. Without extending "just compensation" to Turturro Law and other similarly-situated businesses, the Initiative

---

[4] Turturro Law is located at 1602 McDonald Avenue, Brooklyn, NY 11230. This address is approximately two blocks away from an assigned problematic cluster area as "orange". Moreover, similarly situated law offices only a few blocks away from Turturro Law remain open as "orange" businesses. This includes two law offices located only 4-5 blocks away from Turturro Law, located at 1406 West 3rd Street, Brooklyn, NY 11204 and 2276 65th Street, Brooklyn, NY 11204, not to mention several law offices in adjoining neighborhoods (many of whom currently serve as opposing counsel on litigation and transactional matters).

jeopardizes the sustainability of these business and the rights of the owners with respect
to their property interests.

61. Under the Initiative, all economically beneficial and profitable uses of Turturro Law's
Property, and Turturro Law's interests therein, have been extinguished.

62. The Supreme Court "recognized that government regulation of private property may . . .
be so onerous that its effect is tantamount to a direct appropriation or ouster- and that
such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544
U.S. at 537.

63. "The general rule at least is that while property may be regulated to a certain extent, if
regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v.
Mahon*, 260 U.S. 393, 415-16 (1922).

64. Here, Plaintiff Turturro Law and other similarly-situated businesses have suffered a loss
of "all economically beneficial uses" of their property while Defendant Cuomo's
Initiative remains in effect. This loss categorically constitutes a taking, whether it be of
their inability to profitably operate at its physical locations, or their inability to exercise
their property rights with regard to their tangible property. *See Lucas v. S.C. Coastal
Council*, 505 U.S. 1003, 1019 (1992).

*65.* In essence, Plaintiff has been called upon to sacrifice all beneficial usage of its property
in the name of "crushing the cluster" which amounts to a taking. *Id.*

66. The Supreme Court in *Penn Central* set forth the framework for assessing whether
government action is considered a regulatory taking, identifying "[three] factors that have
particular significance," including: (1) "[t]he economic impact of the regulation on the
claimant"; (2) "the extent to which the regulation has interfered with distinct investment-

backed expectations"; and (3) "the character of the governmental action." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

67. Moreover, even if the regulation falls short of eliminating all economically beneficial use of the property, a taking nonetheless has occurred. *Palazzolo v. R.I.*, 533 U.S. 606, 617 (2001).

68. Here, Defendants issuance and enforcement of Initiative has effectively rendered useless Plaintiff's property from its economic benefit for the pendency that the Initiative will remain in effect. Indeed, Turturro Law's office must remain closed for this entire period.

69.  Therefore, Defendants' Initiative constitutes a regulatory taking implemented for a public purpose, and thus, the failure to pay just compensation contravenes the Takings Clause of the Fifth Amendment. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 478 (6th Cir. 2004); *see also Horne v. Dep't of Agric.,* 576 U.S. 350 (2015) ("Nothing in the text or history of the Takings Clause . . . suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

70. In the United States, the burden is always on the government to justify its actions, not on the citizenry to wait out its deprivations. In the normal course, the State may police the marginal details of its sphere so long as its regulations are related to a legitimate government interest. However, when the State effects laws that burden our fundamental rights, not only must the laws promote a compelling government interest, but they must do so in the manner least burdensome to those rights.

71. There are precious few liberties that we can claim as fundamental. Besides those expressly recognized in the United States Constitution, the public inherits by right the dignities that are either "deeply rooted in this Nation's history and tradition" or that are, by their nature, "implicit in the concept of ordered liberty."

## AS AND FOR A FIRST CLAIM FOR RELIEF:
## VIOLATION OF ART. I, SEC. 8 OF THE U.S. CONSTITUTION UNDER
## 42 U.S.C. § 1983

72. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

73. The Commerce Clause of the United States Constitution provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, sec. 8, cl. 3.

74. The Supreme Court has interpreted the so called "Dormant Commerce Clause" into this Section of the United State Constitution as a prohibition against states passing legislation that discriminates against, or otherwise excessively burdens, interstate commerce. *See, e.g., Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 669-70 (1981).

75.  By taking the above actions, Defendants have discriminated against, and placed an excessive burden upon Turturro Law, which engages in interstate commerce, as Defendant Cuomo has restricted the conduct of business in order to combat COVID-19 and promote public safety.

76. Accordingly, Turturro Law seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative, as any such enforcement would impede Plaintiff's representation of clients as protected under the Commerce Clause of the United States Constitution.

**AS AND FOR A SECOND CLAIM FOR RELIEF:**
**VIOLATION OF ART. I, SEC. 10 OF U.S. CONSTITUTION UNDER**
**<u>42 U.S.C. § 1983</u>**

77. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

78. The Contracts Clause of the United States Constitution provides, among other things, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, sec. 10, cl. 1.

79. The Supreme Court has interpreted the Contracts Clause to prevent the government from interfering with contracts between private parties, and has applied this limitation to the individual state governments. *See, e.g., U.S. v. Winstar Corp.*, 518 U.S. 839 (1996) (*citing Fletcher v. Peck*, 10 U.S. 87 (1810))

80. Defendants' actions have impeded Turturro Law's ability to perform under legal contracts with clients of Turturro Law and other third parties with which the firm has contracted.

81. Plaintiff is a law firm contracted to perform legal services for clients, many of which are "essential."

82. While Plaintiff's employees may work remotely for some matters, client comfort, security of non-public information, and attorney-client privilege factors require accessibility to Turturro Law's office, as well as in-person meetings with Plaintiff's clients, to fulfill its obligation under the contracts to which it is a party. Moreover, while the State may argue that it has relaxed certain statutory deadlines, Turturro Law must still

comply with federal procedural and federal government deadlines for all federal matters that the offices handles.

83. Accordingly, Plaintiff seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative to the extent that any such enforcement would impede Turturro Law's private contracts with client and third parties.

**AS AND FOR A THIRD CLAIM FOR RELIEF:**
**VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER**
**42 U.S.C. § 1983**

84. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

85. The Fifth and Fourteenth Amendments to the United States Constitution require, among other things, that the Federal and State governments may not deprive any person of life, liberty, or property without due process of law. See U.S. Const. amends. V and XIV.

86. Substantive Due Process is a form of due process recognized by the Supreme Court of the United States, and allows courts to strike down laws that are unreasonable or arbitrary or without relation to the purpose of the legislation. *See Nebbia v. New York*, 291 U.S. 502 (1934).

87. Applied here, the Initiative violates Plaintiff's rights as it is unreasonable and arbitrary, and is concentrated solely on random color-coded designations. These designations do not restrict mass gatherings, do not mandate mask-wearing, or "crush the cluster". In fact, access in any manner from those in "red" areas (the cluster areas) to other areas (warning areas or non-designated areas) is not restricted or deterred by the Initiative which ultimately defeats its purpose. Nevertheless, this arbitrary Initiative does restrict Turturro

20

Law from freely conducting business despite its compliance with its protocols, which were prepared and implemented to follow all necessary social distancing, sanitizing, and face covering directives.

88.  Moreover, other businesses deemed essential, including but not limited to, home improvement warehouses, pharmacies, supermarkets, and liquor stores, allow the general public to walk into their stores and come into contact with each other. These essential businesses have not been forced to limit these interactions; and, other law firms located mere blocks away (in the same zip code) are not subject to the same restrictions as Turturro Law since they are not in a "red zone."

89. For example, Turturro Law is able to effectively limit contact with outsiders to its clients, and to keep clients and employees in separate rooms. These rooms are additionally sanitized after visits.  Such limitations on Turturro Law that are not imposed on other essential and non-essential businesses and industries located blocks away and are, therefore, arbitrary, irrational and not reasonably related to the purpose of further preventing the spread of COVID-19 or "crushing the cluster" or addressing "mass gatherings" –i.e, the stated purpose of the Initiative.

90. Accordingly, Turturro Law seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on Turturro Law in violation of Turturro Law's Fifth and Fourteenth Amendment rights.

**AS AND FOR A FOURTH CLAIM FOR RELIEF:**
**VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER**
**42 U.S.C. § 1983**

91. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

92. The Fifth and Fourteenth Amendments to the United States Constitution require, among other things, that the Federal and State governments not deprive any person of life, liberty, or property without due process of law. See U.S. Const. amends. V and XIV.

93. Procedural Due Process is a form of due process recognized by the Supreme Court of the United States, and protects the loss of liberties or property interests without the benefit of a fair procedural process. *See Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

94. Here, in issuing and enforcing the Initiative, Defendants have effectively ordered Turturro Law to cease all or most of its operations without any sort of hearing or formal procedure.

95. Accordingly, Turturro Law seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on Turturro Law in violation of Turturro Law's Fifth and Fourteenth Amendment rights.

**AS AND FOR A FIFTH CLAIM FOR RELIEF:**
**VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT UNDER**
**42 U.S.C. § 1983**

96. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

22

97. The Takings Clause of the Fifth Amendment to the United States Constitution "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536-37 (2005) (*quoting First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (*emphasis in original*).

98. The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster-and that such 'regulatory takings' may be compensable under the [Takings Clause of the] Fifth Amendment." *Lingle*, 544 U.S. at 537.

99. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415- 16 (1922).

100. In the alternative, under the framework articulated by the Supreme Court in *Penn Central,* Defendant Cuomo's Initiative constitutes a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle*, 544 U.S. 528 at 540. 225.

101. Plaintiff has suffered a loss of "all economically beneficial uses" of its property while Defendants' Initiative remains in effect and is being enforced. This loss constitutes a categorical taking, whether it be Plaintiff's inability to profitably operate at its physical locations, or its inability to exercise any of its other property rights with regard to its tangible property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

102.     As the Initiative constitutes a regulatory taking implemented for a public purpose, Defendants' failure to pay just compensation contravenes the Takings Clause of the Fifth and Fourteenth Amendments. *Coalition f or Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 478 (6th Cir. 2004); *see also Horne v. Dep't of Agric.*, 576 U.S. 350 (2015).

103.     Accordingly, Plaintiff seeks: a declaration that the issuance and enforcement of the Initiative is an unconstitutional taking without just compensation under the Fifth and Fourteenth Amendment; a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on Turturro Law in violation of Turturro Law's Fifth and Fourteenth Amendment rights; and compensatory damages adequate to justly compensate Turturro Law for the regulatory taking of its Property.

**AS AND FOR A SIXTH CLAIM FOR RELIEF:**
**VIOLATION OF FOURTEENTH AMENDMENT UNDER**
**42 U.S.C. § 1983**

104.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

105.     When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires at least a rational basis for such disparate treatment, so as to ensure that all persons subject to legislation or governmental regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

106.     As other states are relaxing restrictions based on new data that is emerging,

Defendants are not, and are thus discriminating against identically situated businesses

without any rational basis, in direct violation of Plaintiff's Fourteenth Amendment Equal

Protection rights.

107.     Law firms around the State of New York and City of New York are free to

continue to operate, whereas Defendants' Initiative prevents Plaintiff from so operating.

Moreover, law firms located within walking distance of Plaintiff's office remain fully

operational, while Plaintiff is ordered to close as per this arbitrary directive.

108.     There is no rational basis for the disparate treatment of Plaintiff by Defendant as

compared to identically situated businesses, both within and without the City and State of

New York.

109.     The actions of Defendants are thus in direct violation of Plaintiff's rights under

the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.

110.     Accordingly, Turturro Law seeks a declaration that issuance and enforcement of

the Initiative violate Plaintiff's rights under the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution, as well as a permanent injunction

preventing Defendants, or other applicable governmental/law enforcement authorities,

from enforcing arbitrary restrictions on Turturro Law in violation of Turturro Law's

Fourteenth Amendment rights.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF:
## VIOLATION OF NINTH AND TENTH AMENDMENTS UNDER
## <u>42 U.S.C § 1983</u>

111.     Plaintiff repeats and re-alleges each and every allegation in the preceding

paragraphs of this Complaint, as if fully set forth herein.

112.     The Ninth Amendment to the United States Constitution establishes that the

enumeration in the Constitution of specific rights shall not be construed in order to deny

or disparage the rights retained by the American people. See U.S. Const. amend. IX.

113.     The Tenth Amendment to the United States Constitution establishes that the

powers not delegated to the States by the United States Constitution, nor prohibited by

the United States Constitution to the States, are reserved to the States respectively, or to

the American people. See U.S. Const. amend. X.

114.     Defendants issuing and enforcement of the Initiative is a violation of Plaintiff's

rights under the Ninth and Tenth Amendments of the United States Constitution.

115.     As a proximate result of Defendants' unconstitutional issuance and enforcement

of the aforementioned Initiative, Plaintiff is presently suffering, and will only continue to

suffer, a significant deprivation of its liberty and property interests.

116.     Plaintiff, other than as set forth in this Complaint, has no adequate remedy at law

to address the wrongs described hereinabove. The declaratory and injunctive relief sought

by Turturro Law is thus necessary to prevent continued and future harm and injury.

117.     Accordingly, Turturro Law seeks a permanent injunction preventing Defendantz,

or other applicable governmental/law enforcement authorities, from enforcing arbitrary

restrictions on Turturro Law in violation of the Ninth and Tenth Amendments to the

United States Constitution.

### AS AND FOR A EIGHTH CLAIM FOR RELIEF:
### ATTORNEY'S FEES AND COSTS UNDER
### 42 U.S.C § 1988

118.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

119.     42 U.S.C. § 1988(b) provides, in relevant part, as follows: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

120.     The Supreme Court, in *Hutto v. Finney*, 437 U.S. 678 (1978), affirmed the Court's discretion to award attorney's fees to the prevailing party under 42 U.S.C. § 1988, in actions where a plaintiff is seeking redress for the deprivation of constitutional rights under 42 U.S.C. § 1983.

121.     Here, Plaintiff's First - Eighth Claims for relief are each brought to enforce a provision of 42 U.S.C. § 1983 – namely, that, under color of State law, Defendants have subjected Turturro Law to the egregious deprivation of certain rights, privileges, and immunities secured by the United States Constitution. See 42 U.S.C. § 1983.

122.     Accordingly, Turturro Law seeks its reasonable attorney fees as part of its costs in seeking redress for the deprivation of its constitutional rights under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff seeks the following relief from this Court:

On its First Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative, as any such enforcement would unconstitutionally impede Plaintiff's representation of clients and would unduly and excessively burden interstate commerce;

On its Second Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative, as any such enforcement would unconstitutionally impede Turturro Law's private contracts with clients, independent contractors, vendors, and other third parties;

On its Third Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative, as arbitrary restrictions on Turturro Law, in violation of Plaintiff's Fifth and Fourteenth Amendment substantive due process rights;

On its Fourth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative, as arbitrary restrictions on Turturro Law, in violation of Turturro Law's Fifth and Fourteenth Amendment procedural due process rights under the United States Constitution;

On its Fifth Claim for Relief, that this Court enter an Order declaring that the issuance and enforcement of the Initiative, is an unconstitutional taking without just compensation under the Fifth and Fourteenth Amendment; a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on Turturro Law in violation of Turturro Law's Fifth and Fourteenth Amendment rights; and compensatory damages adequate to justly compensate Turturro Law for the regulatory taking of its Property;

On its Sixth Claim for Relief, that this Court enter an Order declaring that the issuance and enforcement of the Initiative violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, and permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Initiative as arbitrary

restrictions on Turturro Law, in violation of Turturro Law's Fourteenth Amendment equal protection rights under the United States Constitution;

On its Seventh Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities from enforcing the Initiative, in violation of the Ninth and Tenth Amendments to the United States Constitution;

On its Eighth Claim for Relief, that this Court enter an Order awarding Plaintiff its reasonable attorney's fees pursuant to 42 U.S.C. § 1988, for Plaintiff's seeking redress for Defendants' violation of Turturro Law's constitutional rights under 42 U.S.C. § 1983; and

Such other and further relief as this Court may deem just and proper.


Dated:  New York, New York
        October 8, 2020

                                        Yours, etc.
                                        **TURTURRO LAW, P.C.**
                                        By: /s/ NATRAJ S. BHUSHAN
                                        1602 McDonald Avenue
                                        Brooklyn, New York 11230
                                        (718)-384-2323
                                        Email:natraj@turturrolawpc.com
                                        *Attorneys for Plaintiff*